THE TRANSFER NO. 9.

THE CALDERON.

(Circuit Court of Appeals, Second Circuit. May 19, 1909.)

Nos. 226, 227.

COLLISION (§ 102*)—STEAM VESSELS CROSSING—MUTUAL FAULTS.

A collision in New York Harbor, about halfway between the Battery and Governor's Island, in the early morning, between a steamship passing out of the East River to sea and a tug with a car float on each side, *held* due to the fault of both vessels, on a finding that they were on crossing courses, with the red light of the tug showing on the starboard hand of the steamship, which made the starboard hand rule applicable, whereas at the instance of the steamship a two-blast signal was made and agreed to. The steamship *held* in fault for not navigating in accordance

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with such agreement, and the tug for assenting thereto, and both for not sooner stopping when it became apparent that there was a misunderstanding.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 102.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

Appeals from the District Court of the United States for the Southern District of New York.

For opinion below, see 148 Fed. 456.

This cause comes here upon cross-appeals from decrees of the District Court, Southern District of New York, holding Transfer No. 9 and the Calderon both in fault for a collision between the latter and a car float in tow of the former. The opinion of the District Judge will be found in 148 Fed. 456.

Wing, Putnam & Burlingham (Harrington Putnam, of counsel), for the Calderon.

William Greenough (W. S. Montgomery, of counsel), for the Transfer No. 9.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. The District Judge has set forth the facts and the contentions of both sides with great fullness, and they need not be restated here. The case is a very perplexing one, and it is impossible to reconcile the testimony. The District Court had the advantage of hearing all the disinterested witnesses, and also the pilot who navigated the steamer. There is plausibility in the theory presented by counsel for the steamship that the collision resulted from a sudden swerve to the northward on the part of the unwieldy tow at the moment her bow passed the "rip" which marks the boundary of the oppositely moving tides of the North and East Rivers. This same tidal rip was the real cause of the collision between the Britannia and Beaconsfield, reported in 153 U. S. 130, 14 Sup. Ct. 795, 38 L. Ed. 660. Its existence at certain periods is well known, and apparently the master of the tug did not appreciate its force. But the difficulty is that the theory does not fit in with the testimony. The mutual sighting of the two craft and their exchange of signals took place, according to the evidence of both sides, when they were a considerable distance apart and before the tug had drawn near to the rip. By the whistles then exchanged the case must be determined.

We concur in the finding of the District Judge that, when they came in sight of each other and exchanged navigating signals, the Calderon had the red light of the tug on her starboard hand. We do not concur, however, in the conclusion that the bend rule, laid down in The Victory and The Plymothian, 168 U. S. 410, 18 Sup. Ct. 149, 42 L. Ed. 519, should be applied. The two vessels were not following the sinuosities of a river or narrow channel. The Calderon was bound out of the mouth of the East River and down the bay, and the fact that such was her course was apparent to every one, for there was light enough to see just what she was. The vessels were on crossing courses, and the starboard hand rule applied. The tug, as the privi-

.leged vessel, should have kept her course, and the steamship should have kept out of the way. The natural way to navigate under those circumstances would be to exchange one-blast signals and pass to port of each other.

The crucial point in the case is the determination of the question what signals were actually exchanged. There is the sharpest sort of conflict in the testimony on this branch of the case; but after a careful study of it all we are not persuaded that the District Court erred in finding that two-blast signals were exchanged when the vessels came in sight of each other. Of the two disinterested witnesses, one merely did not hear any two-blast signal. The other positively and circumstantially testified to the exchange of such signals. We do not find in his narrative any such discrepancies and contradictions as should tend to discredit him, while the District Judge, who heard him testify, accepted his statement as accurate.

Concurring in this finding of the District Judge, we also assent to his conclusion. The Calderon was in fault because she did not navigate in conformity with a two-blast signal. The tug was in fault because, instead of holding her course as privileged vessel, she initiated a change which would bring her over into that part of the river where down-coming vessels were to be expected, and because she did not observe that the steamer was not changing course to port in conformity with the signals, and failed to take any steps to prevent the consequences of the apparent misunderstanding until it was too late.

Decrees affirmed, with interest and single bill of costs.